IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                                                                     NO. 4:15-CR-73-11

SIDNEY AVANT, III

## ORDER GRANTING MOTION TO DISQUALIFY COUNSEL

This criminal action is before the Court on the motion of the United States of America ("Government") to disqualify Christi R. McCoy as counsel for Sidney Avant, III. Doc. #383.

### I
### Relevant Procedural History

#### A. Fourth Superseding Indictment

On August 31, 2016, the Government filed a fourth superseding indictment in this action, charging Sidney Avant, III ("Avant"), Sidney Avant, Jr., Craig Haynes, Steven Haynes, Derrick Jones, and Talisa Shivers with various crimes related to a heroin trafficking conspiracy. Doc. #310. Of relevance here, Avant is charged in two counts of the fourth superseding indictment: (1) Count Thirteen, which charges Avant with obstruction of justice arising from Avant informing Steven Haynes and Jones that Tony Lewelling[1] was cooperating with federal authorities in an investigation by the Drug Enforcement Administration ("DEA") and others of their heroin trafficking activities; and (2) Count Fourteen, which charges Avant as an accessory after the fact to the heroin distribution conspiracy.

Count Thirteen specifically alleges:

---

[1] The fourth superseding indictment alleges that Lewelling, working as a confidential informant, made undercover purchases of heroin from Steven Haynes, Jones, and others; and that Lewelling and his wife were murdered by Steven Haynes, Jones, and others to prevent them from testifying about the heroin distribution conspiracy. In Count One, Avant is alleged to have been at a meeting with Steven Haynes, Craig Haynes, Jones, and Sidney Avant, Jr., "where they discussed Tony Lewelling's undercover controlled buys of heroin …."

> Beginning on or about the [sic] March 3, 2015, and continuing until August 5, 2016, in the Northern District of Mississippi, defendants SIDNEY AVANT III, a/k/a, "Bubba" and SIDNEY AVANT, JR., a/k/a, "Buddy", conspired with each other and others known and unknown to the Grand Jury to corruptly obstruct, influence and impede an official proceeding; that is, an investigation by the Drug Enforcement Administration and the Bureau of Alcohol, Tobacco, Firearms, and Explosives, agencies of the United States Department of Justice and the Federal Grand Jury in that SIDNEY AVANT III, a/k/a, "Bubba" and SIDNEY AVANT, JR., a/k/a, "Buddy", informed Steven HAYNES and Derrick JONES of the existence of Tony Lewelling's cooperation with federal authorities involving a federal investigation into their heroin trafficking activities, in violation of Title 18, United States Code, Section 1512( c )(2), (k).

Doc. #310 at ¶ 27. Count Fourteen alleges:

> From on or about March 3, 2015, and continuing until August 5, 2016, in the Northern District of Mississippi, SIDNEY AVANT III, a/k/a, "Bubba" and SIDNEY AVANT, JR., a/k/a, "Buddy", defendants, aided and abetted by each other, knowing that an offense against the United States had been committed by Steven Haynes, Craig Haynes, and Derrick Jones, to wit, Conspiracy to Possess with Intent to Distribute and Distribution of Heroin, Possession With Intent to distribute and Distribution of Heroin, as referenced in Count One and Counts Five through Twelve, did relieve, comfort and assist the offenders, Steven Haynes, Craig Haynes, and Derrick Jones, in order to hinder and prevent the offenders' apprehension, trial and punishment for said offenses against the United States, all in violation of Title 18, United States Code, Sections 2 and 3.

*Id.* at ¶ 28.

### B. Appointment of Christi McCoy

On September 6, 2016, United States Magistrate Judge S. Allan Alexander appointed the Federal Public Defender to represent Avant. Doc. #323. The following day, Judge Alexander entered an order substituting McCoy as counsel for Avant. Doc. #326.

On September 26, 2016, the Government filed a "Notice of Potential Conflicts of Interest," informing the Court that McCoy's husband, Dwayne Smith, was the Resident Agent in Charge of the DEA's Oxford, Mississippi, office during the investigation of the charged drug conspiracy. Doc. #363. The notice represented that Smith "was involved with the investigation and took part in the tactical planning of the execution of the various investigation methods

including the wire interception and the investigation of the murder of [a] confidential informant." *Id*. at ¶ 6. The notice further represented that Smith could be called at the trial in this action and that, "[i]f Avant should choose to go to trial, his attorney faces a conflict of interest in having to cross examine her husband or other agents whom her husband supervised." *Id*. at ¶¶ 11, 15.

McCoy responded to the notice on September 27, 2016. Doc. #368. In her response, McCoy represented that Smith's role in the case did not create an actual conflict and that she would not cross-examine her husband should he testify. *Id*. at 7. The issue of McCoy's representation of Avant was noticed for an October 4, 2016, hearing before United States Magistrate Judge Jane M. Virden. Doc. #371.

On October 4, 2016, Judge Virden heard arguments from McCoy and counsel for the Government regarding the conflict issue. Doc. # 374. Although neither side presented evidence at the hearing, McCoy and the Government's counsel made conflicting representations about Smith's involvement in the DEA's investigation.

The following day, on October 5, 2016, Judge Virden issued an order disqualifying McCoy from representing Avant. Doc. #375. Citing Smith's status as a potential witness and "other meritorious arguments made by the government," Judge Virden held that "there is a substantial likelihood of an actual conflict, and that such conflict is not waivable." *Id*. at 3. Accordingly, by separate order entered the same day, Judge Virden appointed the Federal Public Defender to represent Avant. Doc. #376.

### C. Retention of McCoy

Approximately an hour after Judge Virden's appointment of the Federal Public Defender as Avant's counsel, McCoy filed a notice "enter[ing] her appearance as retained counsel" for

Avant.[2] Doc. #378. McCoy represents in her notice of appearance that "Avant is aware of all potential conflicts and the consequences therein." *Id*. at 1. McCoy also used her notice of appearance to argue that, because "she has appeared as retained counsel in other cases wherein DEA was the investigating agency," she "can only surmise that it was the private nature of her representation that provided the difference in the case at bar." *Id.* at 1–2. On October 6, 2016, Judge Virden issued an order substituting David Wayne Milner of the Federal Public Defender as counsel for Avant. Doc. #380.

On October 7, 2016, the Government filed a motion to disqualify McCoy as Avant's counsel. Doc. #383. On October 11, 2016, McCoy e-mailed the Court, copying all counsel, to request a hearing "so that [Avant] may state his intent to waive any conflict on the record." The Court set an evidentiary hearing on the motion for October 20, 2016. Doc. #385.

## II
## Evidentiary Hearing

This Court held an evidentiary hearing on the Government's motion on October 20, 2016. Doc. #403. At the hearing, the Government, McCoy, and the Court questioned Smith on his involvement in the investigation leading to this criminal action, with the Government introducing into evidence multiple documents signed by Smith relative to the DEA's investigation. At the close of the evidence, the Court heard oral argument[3] on the motion and allowed Avant an

---

[2] To the extent McCoy wanted to challenge Judge Virden's order, the proper course would have been to request reconsideration of the issue by the district judge. *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

[3] Before beginning her oral argument, McCoy made a proffer regarding past instances where the Government did not challenge her representation of a criminal defendant in a drug related case, including one case where Smith was actively involved; and one case where McCoy was disqualified from representation of a client in a drug case in which Smith testified. Based on this proffer, McCoy suggested that the Government is not "genuine" in seeking her disqualification in this matter. First, regardless of the Government's motivation in seeking McCoy's disqualification in this case, this Court has an independent obligation to protect Avant's rights. *See United States v. Coleman*, 997 F.2d 1101, 1104 (5th Cir. 1993) ("The district court had the authority and duty to inquire *sua sponte* into whether counsel should not serve because of a conflict with another client."). Furthermore, at most, the proffer reveals that

opportunity to speak privately with Milner, his appointed counsel, regarding the conflict issue. The Court, finding at minimum a serious potential conflict of interest in McCoy's continued representation of Avant, then questioned Avant regarding the issue of waiving his right to conflict-free counsel.

### A. Smith's Testimony

Smith is currently employed in the DEA's Washington, D.C., office and is scheduled to retire on January 7, 2016. From 2009 until late November 2015, he served as the Resident Agent in Charge of the DEA's Oxford, Mississippi, office. In this role, Smith supervised the DEA and task force agents working in the Oxford office. His supervision included the responsibility for approving requests for wiretaps, pen registers, ping warrants, and other investigative techniques. Smith also oversaw administrative personnel, office assistants, and intelligence analysts at the Oxford office.

On August 27, 2014, Smith approved an initiation report for the DEA to join the Mississippi Bureau of Narcotics' investigation into a heroin trafficking organization allegedly run by Steven Haynes, one of Avant's co-defendants in this action. This investigation was conducted as part of the DEA's Organized Crime Drug Enforcement Task Force, which is a funding mechanism for "high profile DEA cases."

From August 2014 until January 2015, Smith approved requests for ping warrants, pen registers, mail covers, and undercover purchases for the investigation of the Haynes drug trafficking organization. In January 2015, Smith approved a wiretap application for two phones believed to be used for the drug trafficking organization. Smith assisted in securing funds and decision-making for the wiretaps. After placement of the wiretaps, Smith received from case

---

the Government has been somewhat inconsistent in seeking disqualification of McCoy in DEA-related cases. It does not suggest, however, that the Government filed the instant motion in bad faith.

5

agents periodic updates on the progress of the wiretaps. He also entered the wire room in Oxford "[a]t least once a day when [he] was there" to listen to wiretap activity and sometimes listened to recordings of the wiretap information captured. Shortly after approving the wiretaps, Smith executed a search warrant on the home of Antonio Lewis, another of Avant's co-defendants in this action. During this search, Smith discovered a quantity of heroin and a firearm.

In March 2015, a confidential informant involved with the investigation, Tony Lewelling, and his wife Penny were murdered. Six months later, in September 2015, Smith approved a report of an interview with Steven Haynes in which it was reported that Avant and his father, another co-defendant in this action, were present at a meeting where Lewelling's status as a confidential informant was disclosed to members of the alleged conspiracy.

All in all, during his supervision of the investigation, Smith approved more than four-hundred subpoenas, forty reports, two wiretaps, two ping warrants, and four pen registers. Through Smith, the Government introduced into evidence without objection eighteen DEA Form 6's signed by Smith approving various investigative actions, and one DEA subpoena. *See* Doc. #405. It appears Avant's name was only mentioned in one of these documents—the September 2015 report of the interview of Steven Haynes. Smith testified that he could not recall hearing Avant's name or voice in any of the wiretaps.

Smith also testified that he was contacted by the United States Attorney's Office in April 2016 to testify at the trial in this matter and that his supervisor informed him that the DEA would not pay for him to return to Oxford to do so. Smith explained that he was asked to testify about the procedure of the DEA, and not against Avant in particular. After this initial contact, Smith testified that he did not hear from the Government again until after McCoy entered her first notice of appearance. The Government, for its part, represented to the Court that it intended to

call Smith as its first witness at trial.[4]

## B. Avant's Waiver

Following his private conversation with Milner, Avant testified that: (1) he is willing to waive any conflict in McCoy's representation of him; (2) he understood his waiver could preclude an ineffective assistance of counsel claim on appeal; (3) he understood the potential hazards of allowing McCoy to proceed as his counsel; and (4) he was aware of his right to have other counsel appointed.

## III
## Analysis

"The Sixth Amendment protects an accused person's right to select and be represented by his preferred attorney, although the essential aim of the amendment is to guarantee an effective advocate for each defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *United States v. Sotelo*, 97 F.3d 782, 791 (5th Cir. 1996). This Sixth Amendment right "is not absolute." *United States v. Jackson*, 805 F.3d 200, 202 (5th Cir. 2015). "Rather, the right to counsel of choice is limited if that counsel has an actual conflict of interest or a serious potential conflict of interest that may arise during the trial." *Id*. Under this standard, there is "a presumption that a defendant is entitled to counsel of choice, [but] that presumption may be rebutted by a showing of actual or potential conflicts of interest." *Id*. If a potential conflict is shown, "[t]he court is required to take action to protect the defendant's right to effective assistance of counsel unless, after inquiry, the court believes that [the] conflict of interest is unlikely to arise." *United States v. Combs*, 222 F.3d 353, 361 (7th Cir. 2000). "As numerous district courts have recognized, the party seeking disqualification bears the burden of

---

[4] After the hearing, the Court held a status conference with counsel to discuss scheduling matters related to certain defense attorneys' stated intent to seek a continuance of trial. The following week, in response to e-mails by counsel to the Court informing of their available dates for a continuance, McCoy e-mailed the Court advising of her husband Smith's unavailability for trial on a date discussed at the status conference for a possible continuance.

proving a conflict." *United States v. DeCay*, 406 F.Supp.2d 679, 683 (E.D. La. 2005).

"Where a district court ... find[s] a conflict of interest between a defendant and his counsel, it must conduct what is commonly known as a '*Garcia* hearing' to ensure a valid waiver by the defendant of his Sixth Amendment right." *United States v. Reagan*, 725 F.3d 471, 487 (5th Cir. 2013); *see United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975). At a *Garcia* hearing, "the district court must ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel." *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (internal quotation marks omitted). However, the district court is afforded "substantial latitude in refusing waivers of conflicts of interest not only if an actual conflict is demonstrated, but in cases where a potential for conflict exists which may result in an actual conflict as the trial progresses." *United States v. Vasquez*, 995 F.2d 40, 42 (5th Cir. 1993).

In light of the above authority, the Government's motion to disqualify must be analyzed in two steps. First, the Court must ask if McCoy's representation of Avant creates an actual conflict of interest or is likely to lead to a serious potential conflict of interest at trial. If the representation creates an actual or potential conflict, the Court must, in the exercise of its discretion, decide whether to accept Avant's waiver of such conflict.

### A. Existence of Conflict or Potential Conflict

"A conflict of interest exists when defense counsel places himself in a position conducive to divided loyalties. This question is highly fact-sensitive." *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005) (internal alterations and citations omitted). Generally, "in determining the existence of a conflict, [courts] look to the ABA Model Rules of Professional

Conduct for guidance."[5] *In re Asbestos Litig.*, 90 F.3d 963, 977 (5th Cir. 1996), *abrogated on other grounds by Amchem Prods, Inc. v. Windsor*, 521 U.S. 591 (1997) *and rev'd sub nom. by Ortiz v. Fibreboard Corp.*, 521 U.S. 1114 (1997). However, a court may find a potential or actual conflict of interest without reference to a rule of professional conduct. *See, e.g., United States v. Jena*, 478 F. App'x 99, 103 (5th Cir. 2012) (finding potential conflict of interest without consideration of professional conduct rules).

Of relevance here, ABA Model Rule 1.7(a) provides that a "concurrent conflict of interest exists if ... there is a significant risk that the representation of one or more clients will be limited by the lawyer's responsibilities to ... a third person or by a personal interest of the lawyer."[6] While neither the Model Rules nor their accompanying comments specifically address a defense counsel's relation to an investigating agent or a potential fact witness, the comment to Rule 1.7 recognizes a conflict "[w]hen lawyers representing different clients in the same matter ... are closely related by blood or marriage." *Id.* at cmt. 11. This conflict exists because, in such a situation, "there may be a significant risk that client confidences will be revealed, and that the lawyer's family relationship will interfere with both loyalty and independent professional judgment."

This case involves a defense counsel's relation by marriage not to an opposing attorney

---

[5] *See In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) ("In reviewing motion to disqualify ... our precedents have applied the ethical canons contained in the ABA model code"); *United States v. Diaz*, No. EP-07-CR-1456, 2007 WL 4205639, at *2 (W.D. Tex. Nov. 27, 2007) ("In instances in which a district court is alerted to a potential conflict of interest, the court must ascertain whether an actual or serious potential conflict of interest exists which adversely affects an attorney's representation of his client. In determining the existence of such a conflict, the ... Fifth Circuit ... relies upon the guidance of the American Bar Association's Model Rules of Professional Conduct ...."). *But see DeCay*, 406 F.Supp.2d at 683 ("In considering whether a conflict exists which would warrant disqualification, courts look to state *and* national ethical standards.") (emphasis added).

[6] To the extent state rules are relevant to the conflict inquiry, the Court notes that the Mississippi Rules of Professional Conduct include a similar definition of conflict. *See* Miss. R. Prof'l Conduct 1.7(b) ("A lawyer shall not represent a client if the representation ... may be materially limited by the lawyer's responsibilities to ... a third person, or by the lawyer's own interests, unless the lawyer reasonably believes: (1) the representation will not be adversely affected; and (2) the client has given knowing and informed consent ....").

but to the resident agent in charge of the investigation of the drug distribution conspiracy charged in the criminal action. McCoy's client is specifically charged with obstructing the investigation of the drug trafficking conspiracy at issue and with being an accessory after the fact of such conspiracy. Using Model Rule 1.7 as a guide, the Court concludes that, like marriage to an opposing lawyer, such a relationship carries a significant risk that client confidences will be revealed and that the lawyer's family relationship will interfere with both loyalty and independent professional judgment. Accordingly, following the guidance of Model Rule 1.7, and considering the circumstances involved in this case, the Court concludes that McCoy's marriage to Smith amounts to an actual and present conflict of interest.[7]

Furthermore, "[t]o show a violation of 18 U.S.C. § 3 (being an accessory after the fact), the government must prove: (1) the commission of an underlying offense against the United States; (2) the defendant's knowledge of that offense; and (3) assistance by the defendant in order to prevent the apprehension, trial, or punishment of the offender." *United States v. De La Rosa*, 171 F.3d 215, 221 (5th Cir. 1999). Accordingly, as charged, the existence of the drug conspiracy is an element of the accessory charge against Avant. Doc. #310 at ¶ 28. To vigorously contest this element on Avant's behalf, McCoy would be forced to undermine the "high profile" investigation her husband led for over a year. Such a situation is conducive to divided loyalties and amounts to a likely and serious potential conflict of interest.

Finally, the United States has represented to this Court that it intends to call Smith as a witness at trial for the purpose of outlining the procedural elements of the DEA's investigation.

---

[7] As noted above, McCoy, through e-mail, notified the Court that her husband Smith, a Government witness, is not available on one of the dates discussed for a possible trial continuance. Her e-mail reads, "Dwayne Smith is not on this email exchange and the government did not bother to check with their #1, first out of the box witness. But I can advise that he will not be available the last week of May and the first two weeks of June." This communication by McCoy exemplifies some level of divided loyalties, even if unintended, as well as questionable professional judgment. The tenor of her message is also of concern to the Court.

McCoy contends that Smith's potential as a witness does not amount to a serious potential conflict because Smith is not a "key witness" and because Smith has no personal knowledge of anything Avant did and thus would not need to be cross-examined.

As an initial matter, as explained above, Smith's involvement with the conspiracy investigation is directly related to the accessory charge against Avant. It is therefore certainly possible and probable that Smith's testimony regarding the drug conspiracy would necessitate a cross-examination of him by McCoy.[8]

Next, in *United States v. Jena*, the Fifth Circuit affirmed a district court's finding of a potential conflict of interest where the defense counsel's wife was the "key witness" on one of the charges against the counsel's client. 478 F. App'x at 103. While the Fifth Circuit referred to the defense counsel's wife as a "key witness," nothing in the opinion defines the term "key witness" or suggests that the finding of a conflict was dependent on the wife's status as a "key witness." To the contrary, the Fifth Circuit held that "[t]he potential that [defense counsel] would need to cross-examine his wife is enough to render the district court's decision to disqualify within the bounds of its discretion." *Id.* Given this holding, the Court concludes that Smith's status as a "key witness" is irrelevant to the potential for a conflict. Accordingly, the potential need for McCoy to cross-examine Smith constitutes a serious potential conflict of interest.

## B. Waiver

Having found the existence of actual and potential conflicts, the Court must next decide whether to accept Avant's waiver of such conflicts. In this regard, "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare

---

[8] McCoy stated at hearing that she would lack standing to challenge the evidence related to the drug conspiracy. To the extent the existence of the drug conspiracy is an element of one of the charges brought against Avant, this assertion is clearly incorrect.

11

cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat v. United States*, 486 U.S. 153, 163 (1988). This authority is derived from the district court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Vasquez*, 995 F.2d at 42 (quoting *Wheat*, 486 U.S. at 160). In considering whether to accept a waiver, courts in this circuit have considered a variety of factors, including: (1) whether the relevant conflict "gravely imperils the prospect of a fair trial;"[9] (2) whether the prosecution is in its "early stages;"[10] (3) whether continued representation would violate an applicable rule of professional conduct;[11] (4) whether the representation would result in proceedings that would appear unfair or improper;[12] (5) whether there are available means for mitigating the conflict;[13] and (6) whether the Government sought to "manufacture" the conflict.[14]

Here, the relevant factors are somewhat mixed. First, as explained above, in order to prove the accessory charge against Avant, the Government would be required to show the

---

[9] *Jackson*, 805 F.3d at 203 (quoting *Wheat*, 486 U.S. at 166 (Marshall, J. dissenting)).

[10] *United States v. Marroquin*, No. C-09-268, 2009 WL 1544061, at *2 (S.D. Tex. June 1, 2009) ("[A]s the criminal prosecution is in its early states, it is best to eliminate the conflict of interest now so that it does not taint the proceedings in the future. Indeed, removal now ensures that the defendant will receive fair representation and a fair trial.").

[11] *United States v. Reeves*, 892 F.2d 1223, 1227–28 (5th Cir. 1990) ("The Supreme Court has made clear that federal courts have an 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession,' and Carter's representation of Kerlegon was obviously contrary to the Rules of Professional Conduct.") (internal citations omitted) (quoting *Wheat*, 486 U.S. at 160).

[12] *United States v. Gharbi*, 510 F.3d 550, 553–54 (5th Cir. 2007) ("In order to protect the rights of all parties and preserve the appearance of fairness, the district court held that Gharbi and Maryam needed separate and independent counsel. This decision was well within the bounds established by *Wheat* and is consistent with our precedent."); *United States v. Aleman*, No. CRIM.EP-04-CR-1509 K, 2004 WL 1834602, *5 (W.D. Tex. Aug. 12, 2004) ("[T]his Court is not convinced that Ms. Stillinger's appearance would violate applicable ethical rules or result in proceedings that would appear unfair or improper.").

[13] *United States v. Sanchez-Guerrero*, 546 F.3d 328, 334 (5th Cir. 2008) (considering whether retention of untainted co-counsel was appropriate).

[14] *Wheat*, 486 U.S. at 163.

existence of the very drug conspiracy investigated by Smith. While the nature of the conflict from McCoy's representation of Avant in this regard carries a grave risk of prejudice to Avant at trial, the Court believes that McCoy, who is representing Avant pro bono,[15] is sincere in her desire to defend the charges to the best of her ability. Under these circumstances, the Court finds the first factor to be neutral.

Second, trial is currently set for January 2017, but an unopposed motion seeking a continuance until "Spring of 2017 at the earliest" was recently filed.[16] Doc. #423. Based on the representations of counsel about their availability, trial will most likely not occur any earlier than Spring 2017. Because this case is still in its early stages, particularly since Avant was not brought into this case until the fourth superseding indictment and McCoy has been involved with the case only since last month, the second factor weighs against acceptance of Avant's waiver.

Third, Model Rule 1.7(b) provides that an attorney with a personal conflict may represent a client if the lawyer reasonably believes that she will be able to provide competent and diligent representation, the representation is not prohibited by law, the representation does not involve competing claims between clients, and the client gives informed consent. Mississippi Rule of Professional Conduct 1.7(b) allows for representation under similar, if not identical, circumstances. The Court assumes McCoy could satisfy these dictates and that, therefore, her continued representation would not violate applicable ethical rules. This factor weighs in favor of acceptance of the waiver.

The fourth factor weighs heavily against acceptance of the waiver. The presence at the

---

[15] At the evidentiary hearing, the Court questioned McCoy on the nature of her fee arrangement with Avant, who had been previously declared indigent. McCoy objected to the question on the basis of attorney-client privilege, but ultimately provided an answer. The Court notes that "[a]s a general rule, client identity and fee arrangements are not protected as privileged." *In re Grand Jury Subpoena for Attorney Representing Crim. Defendant Reyes-Requena*, 926 F.2d 1423, 1431 (5th Cir. 1991).

[16] The motion represents that counsel for Talisa Shivers who, for reasons unknown, did not appear at the status conference, was not contacted regarding any opposition. Doc. #423 at ¶ 6.

defense table of the wife of the agent in charge of the DEA's investigation, who is currently slated to be the Government's first witness, would result in the proceedings appearing unfair or improper.

As for the fifth factor, McCoy has represented to the Court that she intends to retain co-counsel to cross-examine Smith should he be called to testify. To date, no such counsel has entered an appearance. Regardless, the retention of untainted co-counsel generally cannot remedy a conflict. *See United States v. Cesario*, No. 3:16-cr-60-M, 2016 WL 5791549, at *3 (N.D. Tex. Oct. 4, 2016) ("The United States Court of Appeals for the Fifth Circuit has affirmed that a court may deny a request to associate co-counsel based on the serious potential for a conflict of interest.") (internal quotation marks omitted) (quoting *United States v. Gharbi*, 510 F.3d 550, 553–54 (5th Cir. 2007)). McCoy has offered no additional means of mitigating her conflict in this regard and this Court is unaware of any. This factor weighs against acceptance.

Finally, McCoy has suggested (if not argued) that the Government only designated Smith as a potential witness as a means of disqualifying her. The Court finds this suggestion to be without merit. The record reveals that Smith has been used as a procedural witness by the Government in a separate DEA case and was identified as a potential witness in this case in April, well before McCoy entered her appearance. While Smith was not contacted again until after McCoy's notice of appearance, nothing in the record suggests that his status as a potential witness ever changed. Under these circumstances, the Court concludes that the Government's stated intent to call Smith as a witness is not a tactical maneuver to disqualify McCoy, and that the Government did not attempt to manufacture the conflicts at issue here. Accordingly, the sixth factor weighs against acceptance.

Upon consideration of the relevant factors, the Court, in the exercise of its discretion,

declines to accept Avant's waiver of the conflicts the Court finds exist in McCoy's representation of Avant. Therefore, the United States' motion to disqualify will be granted.

## IV
## Conclusion

Because McCoy's representation of Avant involves actual and potential serious conflicts of interest, and because the Court declines to accept Avant's waiver, the Government's motion to disqualify [383] is **GRANTED**.

**SO ORDERED**, this 28th day of October, 2016.

**/s/ Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**